ROWELL *v*. ROWELL.

The court has not authority to order an allowance for the support of the wife during the pendency of a libel for divorce against her by the husband.

LIBEL FOR DIVORCE. Motion for the libellee for an allowance to be paid by the libellant for her support during the pendency of the libel.

*Bingham, Aldrich & Remick* (with whom were *Ladd & Fletcher*), for the libellee. Prior to the Revolution, divorces were granted by the legislature as they are sometimes granted by parliament in England. And alimony, or an allowance, *pendente lite*, was a common-law right. 2 Bish. Mar. & Div., s. 400; *Parsons* v. *Parsons*, 9 N. H. 317; 1 Bl. Com. 441; *Cooke* v. *Cooke*, 2 Phill. Ecc. R. 40. The power to order relief of this character was certainly exercised by the ecclesiastical courts, and perhaps by parliament. The constitution in 1783 provided that "all causes of marriage, divorce, and alimony   *   *   *   shall be heard and tried by the superior court, until the legislature shall by law make other provision." Similar provisions were adopted in all or nearly all the other states. It would seem that some of the states treated this as a mere transfer of jurisdiction, and exercised the power existing at the common law, while in other jurisdictions the provision of the constitution and acts of the legislature were treated as the source of power, and authority was not exercised beyond the express terms of the legislative acts. It will be observed, upon an examination of the cases where the right is denied, that the denial is upon technical grounds, and that the justness and soundness of the principle are conceded; and the result in every state has been an enlargement of authority by act of the legislature.

In Georgia it was held, in a luminous opinion, that the power to

grant alimony *pendente lite* was incidental to the jurisdiction of the superior court. *McGee* v. *McGee*, 10 Ga. 477;—to the same effect, *Petrie* v. *People*, 40 Ill. 334; *Lauber* v. *Mast*, 15 La. Ann. 593; *Daiger* v. *Daiger*, 2 Md. Ch. 335; *Coles* v. *Coles*, *ib.* 341; *Story* v. *Story*, Walk. Ch. 421; *Paterson* v. *Paterson*, 5 N. J. Eq. 389; *Amos* v. *Amos*, 4 N. J. Eq. 171; *Vreeland* v. *Vreeland*, 18 N. J. Eq. 43; *Mix* v. *Mix*, 1 Johns. Ch. 108; *Denton* v. *Denton*, *ib.* 364; *Thompson* v. *Thompson*, 3 Head 527; *North* v. *North*, 1 Barb. Ch. 241; *Bauman* v. *Bauman*, 18 Ark. 320; *Lynde* v. *Lynde*, 4 Sanf. Ch. 373.

In *Harrington* v. *Harrington*, 10 Vt. 505, decided in 1838, the power was denied; in 1852 the legislature interfered by giving the courts authority. In North Carolina, in *Wilson* v. *Wilson*, 2 Dev. & Bat. 377, the power was denied by the court, but authority was conferred in 1852. In Massachusetts it was denied in 1851 and 1854, and in 1855 the legislature gave the court full authority. In Kentucky it was ordered under a statute, in the following language: "Pending a suit for divorce, the court may make such temporary orders relative to the property and parties as they shall deem equitable." 2 Bish. Mar. & Div., *s.* 398, *n.* 2.

The statute of 1791, and no other, was in force in 1832, when *Parsons* v. *Parsons* was decided. At the time of the revision, in 1842, the following words were added: "And may compel the husband to disclose under oath the situation of said property, and before or after such decree may make such orders and use such process as may be necessary to carry the same into effect," &c. Rev. St. 294, *s.* 13. In 1867, when the General Statutes were adopted, this section was revised, and the words " said property " and the words " to carry the same into effect " were omitted; and we say the statute, in its present shape, gives full authority, " either before or after decree, to make such orders and use such process as may be necessary," or as justice may require. Gen. St. 336, *s.* 12. *Parsons* v. *Parsons* was an independent proceeding in chancery to compel the husband to contribute to the support of the wife apart from her husband; and the question presented was quite different from one arising upon an application to the court pending proceedings on the part of the husband for a divorce. The same distinction was made in *Wilson* v. *Wilson*, *supra.* There the statute was silent respecting temporary alimony, and contained no intimation of an intent to introduce the ecclesiastical practice; and the court held that it had no authority, but reserved for a future occasion the question whether it would be done where a husband was pursuing his wife who was without means for a divorce.

Probably there is no state in the Union where an allowance of this character is withheld upon proper motion by the wife, in a proceeding by the husband for a divorce where the wife is without means. That the wife may pledge the husband's credit for her support is no justification for the rule claimed by the other side

as peculiar to New Hampshire. The wife could do that at the common law, and in other states as well as in New Hampshire. It is not an adequate remedy. The public might sympathize with the husband, and refuse credit. The public might sympathize with the wife, and prefer to keep their goods, knowing that it would be necessary to resort to proceedings at law to collect pay. It necessarily depresses the wife, and places her at the mercy and inquisition of the public. It necessarily creates a multiplicity of suits, in each of which the husband may contest the questions, whether the wife was justified in living away from the husband; whether the goods furnished were reasonable and necessary, etc. The obligation is upon the husband to support the wife until a divorce is decreed, and this is so whether the wife is in fault or not. The exercise of such authority is beneficial, because it fixes the amount of support, and limits the liability of the husband, and saves useless and unnecessary litigation. It is within the discretion of the court to say, as a condition upon which the husband shall carry on his proceeding for a divorce, that he shall furnish that support pending the litigation. This is reasonable, just, and salutary, and such considerations wrought the statutory change in all the states where it was ever denied. It raises the oppressed wife to the dignity of an equal footing with her husband who is pursuing her in the courts of justice. To say that the husband may withhold this support pending his proceeding for a divorce, saving to her the privilege of begging for credit and sustenance, and the consolation of pledging his credit if she can, is a practical denial of justice. Chancellor Kent observes (2 Kent 99, *n.*),— "I am entirely convinced, from my own judicial experience, that such a discretion is properly confided to the courts." There is as much authority for granting an allowance for temporary support as for suit money. They are the same in principle. 2 Bish. Mar. & Div., *s.* 398.

*Drew, Jordan & Carpenter*, for the libellant. I. The common-law practice in regard to divorce does not prevail here. Our statute has always "been regarded as a legislation upon the whole subject." *Parsons* v. *Parsons*, 9 N. H. 318. The only authority for the court to grant alimony of any kind is given by *s.* 12, *c.* 182, Gen. Laws; but that statute expressly provides that alimony may only be given "upon any decree of nullity or divorce." And so this court has always held. *Parsons* v. *Parsons*, *supra; Sheafe* v. *Sheafe*, 24 N. H. 567—affirmed in *Sheafe* v. *Laighton*, 36 N. H. 243;—see, also, *Morris* v. *Palmer*, 39 N. H. 128; *Morrison* v. *Holt*, 42 N. H. 481; Reporter's Note, 49 N. H. vii; *Ray* v. *Adden*, 50 N. H. 84; *Whipp* v. *Whipp*, 54 N. H. 582; *Quincy* v. *Quincy*, 10 N. H. 272; *Coffin* v. *Dunham*, 8 Cush. 405; *Baldwin* v. *Baldwin*, 6 Gray 342. The practice is thus well settled in this state, that no allowance for support *pendente lite* will be made. Our courts

have wisely left the whole matter of alimony to be adjusted in the final decree, after a divorce, and have thus prevented the "disgraceful scramble after the husband's property" among the wife's lawyers that has caused so much scandal in other states.  *Williams* v. *Williams,* 29 Wis. 517, 530.

II. No allowance *pendente lite* is ever made in favor of a libellant, not even a sum with which to conduct the suit.   Reporter's note, *supra; Parsons* v. *Parsons,* 9 N. H. 319 ; *Morrison* v. *Holt,* 42 N. H. 481, 482 ; *Ray* v. *Adden,* 50 N. H. 84 ; *Whipp* v. *Whipp,* 54 N. H. 582.   And the reason of this rule is, that the wife's necessary expenses incurred in the litigation, as well as for her present support, can all be considered in the final award of alimony, if any is decreed.   In these proceedings Mrs. Rowell has made herself a libellant, and has thus brought her case within the reason of the rule.

STANLEY, J.   The question is, whether an order can be made granting the libellee an allowance for her support during the pendency of the libel.   It is claimed that such an order is authorized by *s.* 12, *c.* 182, Gen. Laws, which provides, that "upon any decree of nullity or divorce the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just, and may compel the husband to disclose, under oath, the situation of his property, and, before or after such decree, may make such orders and use such process as may be necessary."   This is a substantial reënactment of Rev. St., *c.* 148, *s.* 13 (Com. Rep., 1867, *c.* 164, *s.* 13) ; and this provision of the Revised Statutes is a reënactment of the provision of the statute of 1791, Laws 1830, *p.* 157.   No other provision for the maintenance of the wife, or for alimony, by a decree of this court, has been known except the provision authorized by this statute, unless a small sum, sometimes ordered to be paid to the wife to enable her to defend against the application of the husband for a divorce, may be termed an allowance for her support.   *Parsons* v. *Parsons,* 9 N. H. 315.   The doctrine of this case was approved in *Sheafe* v. *Sheafe,* 24 N. H. 567, and in *Sheafe* v. *Leighton,* 36 N. H. 240.   The order asked for is for alimony before there has been a decree of nullity or divorce.   It is contrary to the construction of the statute, settled by long and uniform practice, and should not be made.

*Case discharged.*

BLODGETT, J., did not sit : the others concurred.